# THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ANTHONY HALCHAK, et al.,

    Plaintiffs,

v.

DORRANCE TOWNSHIP BOARD OF SUPERVISORS, et al.,

    Defendants.

3:18-CV-1285
(JUDGE MARIANI)
(Magistrate Judge Carlson)

## MEMORANDUM OPINION

### I. INTRODUCTION and PROCEDURAL HISTORY

Presently before the Court is a Report and Recommendation ("R&R") (Doc. 35) by Magistrate Judge Martin C. Carlson in which he recommends that The Dorrance Township Board of Supervisors and Alan Snelson's Motion to Dismiss Amended Complaint (Doc. 2) and Motion of Defendants, Code Inspections, Inc. and Ken Fenstermacher, to Dismiss Plaintiffs' Amended Complaint for Failure to State a Claim upon Which Relief Can Be Granted, Pursuant to F.R.C.P. 12(b)(6) (Doc. 7) be granted as to Plaintiffs' Fourteenth Amendment Procedural Due Process claims and Plaintiffs' state law claims be dismissed without prejudice for renewal in state court (Doc. 35 at 20-22). For the reasons discussed below, the Court disagrees.

The operative complaint is the Amended Complaint filed in the Court of Common Pleas of Lackawanna County (Doc. 2-1) and removed to this Court on June 26, 2018, by

Defendants Dorrance Township Board of Supervisors and Alan Snelson ("Dorrance Defendants") (Doc. 1). Defendants Code Inspections, Inc. and Ken Fenstermacher ("CII Defendants") consented to the Notice of Removal. (Doc. 1 at 3 ¶ 9.) Although the Amended Complaint contains five counts, the Court of Common Pleas denied Plaintiffs' Petition as to Counts II and III (Doc. 2 ¶ 3 & n.1) with the result that Counts I, IV, and V are before this Court. Count I does not identify a specific cause of action. (See Doc. 2-1 at 1.) However, as discussed in the R&R, Count I contains federal procedural due process claims which provide the basis for federal jurisdiction. (Doc. 35 at 3-4.)

Magistrate Judge Carlson provided the following brief factual summary of the underlying action:

> This litigation involves a longstanding local land use dispute between Anthony and Kelly Halchak, who have for the past ten years sought an occupancy permit to operate a used car business on a parcel of land which they own, and Dorrance Township, Alan Snelson, the township zoning officer, as well as Code Inspections, Inc., a private firm hired by the township to provide code inspection and enforcement services for the township, and one of its employees, Ken Fenstermacher. (Doc. 2-1.)

(Doc. 35 at 2.) There is no dispute that Plaintiffs' application for an occupancy permit was never granted or denied. (*See, e.g.*, Doc. 8 at 5.)

Plaintiff filed objections to the R&R and a brief in support of the objections on September 13, 2019. (Docs. 36, 36-1.) Defendants did not file objections to the R&R and the time for doing so has passed. Dorrance Defendants and CII Defendants each filed a timely response to Plaintiffs' objections. (Docs. 37, 38.)

2

A District Court may "designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition" of certain matters pending before the Court. 28 U.S.C. § 636(b)(1)(B). If a party timely and properly files a written objection to a Magistrate Judge's Report and Recommendation, the District Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* at § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b)(3); M.D. Pa. Local Rule 72.3; *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011). "If a party does not object timely to a magistrate judge's report and recommendation, the party may lose its right to *de novo* review by the district court." *EEOC v. City of Long Branch*, 866 F.3d 93, 99-100 (3d Cir. 2017). However, "because a district court must take some action for a report and recommendation to become a final order and because the authority and the responsibility to make an informed, final determination remains with the judge, even absent objections to the report and recommendation, a district court should afford some level of review to dispositive legal issues raised by the report." *Id.* at 100 (internal citations and quotation marks omitted).

Having conducted the required *de novo* review, the Court concludes that Defendants have not shown that Plaintiffs' Amended Complaint does not state a plausible claim for relief based on the asserted Fourteenth Amendment procedural due process violation.

## II. ANALYSIS

Plaintiffs object to the R&R's recommendation that Defendants' motions be granted as to their federal procedural due process claims, summarizing their position as follows: "[t]he Report is focused on the Pennsylvania procedural schemes with regard to land use issued, but the Report fails to review the actions or inactions of Dorrance and its code enforcement official and how their actions or inactions effectively prevented the Halchaks from any procedural process resulting in an absolute denial of their due process rights." (Doc. 36 at 9 ¶ 31.) For the reasons that follow, the Court concludes that Defendants and the R&R do not adequately address Plaintiffs' Amended Complaint and facts asserted therein in the appropriate context regarding their claimed Fourteenth Amendment Procedural Due Process Clause violation.

At the outset, the R&R identified federal courts' general consideration of local land use disputes, noting that

> federal courts have repeatedly []
>
>> emphasize[d] . . . our reluctance to substitute our judgment for that of local decision-makers, particularly in matters of such local concern as land-use planning, absent a local decision void of a "plausible rational basis." *Pace*, 808 F.2d at 1035. We decline to federalize routine landuse decisions. Rather, the validity of land-use decisions by local agencies ordinarily should be decided under state law in state courts.
>
> *Sameric Corp. of Delaware v. City of Philadelphia*, 142 F.3d 582, 596 (3d Cir. 1998). Thus, decisional case law in federal court studiously "avoid[s] converting federal courts into super zoning tribunals." *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 285 (3d Cir. 2004).

4

(Doc. 35 at 1-2.)

The Magistrate Judge then looked to the legal standards governing federal procedural due process claims in local land use disputes and set out the following legal framework:

> the governing legal standards for federal procedural due process claims are both exacting and well-settled. As we have noted:
>
>> The Fourteenth Amendment prohibits a state from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. In order to make out a claim for a violation of procedural due process, a plaintiff must allege three elements: (1) that the defendant was acting under color of state law; (2) that the defendant deprived him of a property interest; and (3) the state procedures for challenging the deprivation did not satisfy the requirements of procedural due process. *Midnight Sessions, Ltd. v. City of Phila.*, 945 F.2d 667, 680 (3d Cir. 1991) (overruled on other grounds by *United Artists Theatre Circuit v. Twp. of Warrington*, 316 F.3d 392 (2003); *see also*, *Parratt v. Taylor*, 451 U.S. 527, 536-37 (1981). When a state "affords a full judicial mechanism with which to challenge the administrative decision" at issue, it provides adequate procedural due process, irrespective of whether the plaintiffs avail themselves of that process. *DeBlasio v. Zoning Bd. of Adjustment*, 53 F.3d 592, 597 (3d Cir. 1995) (overruled on other grounds by *United Artists*, 316 F.3d 392; *see also*, *Midnight Sessions*, 945 F.2d at 681 ("The availability of a full judicial mechanism to challenge the administrative decision to deny an application, even an application that was wrongly decided, preclude[s] a determination that the decision was made pursuant to a constitutionally defective procedure.").
>
> *Sutton v. Chanceford Twp.*, No. 1:14-CV-1584, 2016 WL 7231702, at *10 (M.D. Pa. Dec. 14, 2016), *aff'd*, 763 F. App'x 1186 (3d Cir 2019).

5

Further, with respect to the third, and final, essential element of a federal procedural due process claim—the question of whether the existing state procedure satisfies the rudiments of due process—we do not write upon a blank slate. Federal courts have frequently considered whether the administrative and legal remedies available under Pennsylvania law to persons aggrieved by local municipality land use decisions satisfy the requirements of procedural due process. Without exception, these courts have found that "Pennsylvania's scheme for judicial review of administrative land use decisions has . . . passed constitutional muster." *Sixth Angel Shepherd Rescue Inc. v. West*, 790 F. Supp. 2d 339, 358 (E.D. Pa. 2011), aff'd, 477 F. App'x 903 (3d Cir. 2012) (citing *Perano v. Twp. of Tilden*, 423 F. App'x 234, 237 (3d Cir. 2011)); *see also, Bello v. Walker*, 840 F.2d 1124, 1128 (3d Cir. 1988). As to such claims, it is often held that "[b]ecause Pennsylvania's state procedure for challenging an administrative zoning decision satisfies procedural due process, plaintiff fails to state a claim founded on a violation of procedural due process." *Nicolette v. Caruso*, 315 F. Supp. 2d 710, 721 (W.D. Pa. 2003).

Further, when avenues of legal recourse are available to a party under state law:

> In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate. "[A] state cannot be held to have violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail himself of them." *Dusanek v. Hannon*, 677 F.2d 538, 543 (7th Cir.1982); *see also, Bohn v. County of Dakota*, 772 F.2d 1433, 1441 (8th Cir.1985). A due process violation "is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process." *Zinermon v. Burch*, 494 U.S. 113, 126, 110 S. Ct. 975, 108 L. Ed. 2d 100 (1990). If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants. See *McDaniels v. Flick*, 59 F.3d 446, 460 (3d Cir.1995); *Dwyer v. Regan*, 777 F.2d 825, 834–35 (2d Cir.1985), modified on other grounds, 793 F.2d 457 (2d Cir. 1986); *Riggins v. Board of Regents*, 790 F.2d 707, 711–12 (8th Cir. 1986).

*Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000).

> Accordingly, relying upon this principle in the context of land use litigation, federal courts frequently reject procedural due process claims made by plaintiffs who have not fully availed themselves of their existing potential remedies under state law. *See, e.g., Giuliani v. Springfield Twp.*, 238 F. Supp. 3d 670, 692 (E.D. Pa. 2017), aff'd, 726 F. App'x 118 (3d Cir. 2018); *Sixth Angel Shepherd Rescue Inc. v. West*, 790 F. Supp. 2d 339, 358 (E.D. Pa. 2011), *aff'd*, 477 F. App'x 903 (3d Cir. 2012). Therefore, when the "Plaintiffs did not avail themselves of the procedural protections available under Pennsylvania law, they cannot sustain a federal procedural due process claim." *McLaughlin v. Forty Fort Borough*, 64 F. Supp. 3d 631, 647 (M.D. Pa. 2014). Similarly, when the record discloses that judicial remedies were available to the plaintiffs under state law, and the plaintiffs actually availed themselves of those remedies by pursuing state court litigation, a federal procedural due process claim typically fails as a matter of law. *Sixth Angel Shepherd Rescue Inc. v. West*, 790 F. Supp. 2d 339, 358 (E.D. Pa. 2011), *aff'd*, 477 F. App'x 903 (3d Cir. 2012) (denying procedural due process claim when the plaintiff "is currently pursuing its appeal of the . . . Zoning Hearing Board's decision through Pennsylvania's court system").

(Doc. 35 at 10-14.)

Considering Plaintiffs' federal due process claims in this context, the Magistrate Judge concluded that Plaintiffs did not show "that the third element of a procedural due process claim in this setting is satisfied in that they have not shown that the state procedures for challenging the local municipality land use decision did not satisfy the requirements of procedural due process." (Doc. 35 at 14.) The basis for this conclusion was the finding that Plaintiffs had two paths to follow which could afford them procedural due process—an administrative appeal to the Dorrance Township appeals board or state court judicial review—and they exercised the latter of the two. (*Id.*)

Regarding administrative appeal, the Magistrate Judge stated

7

> it is apparent that state law afforded the Halchaks procedural due process through the opportunity to pursue an administrative appeal of any land use decision to a board of appeals pursuant to 34 Pa.C.S. § 403.121. It is also uncontested that the Halchaks never availed themselves of their right to seek an administrative appeal, thus foregoing one form of procedural due process afforded to them under state law.

(Doc. 35 at 15.) The Magistrate Judge also found, "more fundamentally,"

> it is absolutely undisputed that the state provided a full judicial mechanism with which to challenge this administrative decision. In fact, the *Halchaks* actively utilized this state judicial mechanism for nearly three years prior to the removal of this case to federal court. Since "Pennsylvania's scheme for judicial review of administrative land use decisions has . . . passed constitutional muster," *Sixth Angel Shepherd Rescue Inc. v. West*, 790 F. Supp. 2d 339, 358 (E.D. Pa. 2011), aff'd, 477 F. App'x 903 (3d Cir. 2012) (citing *Perano v. Twp. of Tilden*, 423 F. App'x 234, 237 (3d Cir. 2011)); *Bello v. Walker*, 840 F.2d 1124, 1128 (3d Cir. 1988), the plaintiffs' actual use of these available judicial remedies rebuts any claim that they have been denied procedural due process by the state.

(Doc. 35 at 16.)

With their objections, Plaintiffs reject the R&R's reliance on cited cases "which recognize the availability for state review of an administrative 'decision.'" (Doc. 36 at 2 ¶ 3.) Plaintiffs note that the R&R does not "discuss or consider the fact that there was an absence of a decision . . . concerning the Halchaks application for an occupancy permit ('OP') . . . [and] [w]ithout the decision, there was no trigger to take an appeal." (*Id.*) Plaintiffs further aver that Defendants' actions prevented their right of appeal so "even though Pennsylvania has a constitutional scheme of appeal rights, defendants have effectively blocked [their] right . . . to their due process rights by merely doing nothing regarding a formal decision concerning the OP application." (*Id.*) Plaintiffs also state that

8

"there was nothing that could have been appealed to an appeals board, even if one existed" (*id.* at 5 ¶ 15), and the filing of the mandamus action in state court resulted from Defendants' failure to act on the OP application (*id.* ¶¶ 16, 17).

The Court concludes that Plaintiff's criticism of the R&R is both facially persuasive and legally significant. First, the cases relied upon in the R&R which related to land use issues, both Third Circuit opinions and those from district courts within the Third Circuit, addressed situations where the municipality had reached at least an initial decision on the plaintiff's permit application or other matter at issue.[1] This distinguishing fact is significant in that "[i]It is well established that, in cases involving land-use decisions, a property owner does not have a ripe, constitutional claim until the zoning authorities have had "an opportunity to arrive at a final, definitive position regarding how they will apply the regulations at issue to the particular land in question." *Sameric*, 142 F.3d at 597 (internal quotation and citation omitted). As noted previously, here it is undisputed that Plaintiffs' application for an occupancy permit was never granted or denied. (*See, e.g.*, Doc. 8 at 5.)

---

[1] *Eichenlaub*, *Sameric*, and *Pace* involved appeals from municipal zoning decisions and were decided in the context of substantive due process. *Eichenlaub*, 385 F.3d at 385; *Sameric*, 142 F.3d at 596; *Pace*, 808 F.2d at 1034-35. *Bello* was decided in the context of an initial denial and subsequent delay in issuing a building permit. 840 F.2d at 1126-28. *Sutton* considered the municipality's denial of a zoning permit. 2016 WL 7231702, at *10. In *McLaughlin*, land use decisions had been made by the municipality and the plaintiffs were aggrieved by those decisions which allowed the establishment of a bakery distribution business near their home and they claimed, *inter alia*, that they were not "afforded any right to be heard on the issue of whether the Dunkin' Donuts could manufacture in a C1 district, which the Defendants admit is not permissible." 64 F. Supp. 3d at 646 (citation omitted). *Sixth Angel* considered the municipal zoning hearing board's decision to affirm the zoning hearing officer's issuance of a cease and desist letter to the plaintiff for violation of the local zoning ordinance where the plaintiff was pursuing an appeal of the zoning hearing board's decision in state court. 790 F. Supp. 2d at 347, 358.

The effect of the withholding of a decision has not been addressed by the Magistrate Judge or Defendants and it is a legally significant fact because, without the municipal authority's definitive position on whether an application is granted or denied, consideration of an aggrieved applicant's claim may ultimately be hindered or foreclosed.

Second, in assessing what processes were available to the plaintiff, the land use decisions cited looked to the availability of judicial review of land use decisions in both the zoning and building code permit contexts. *See, e.g., Bello*, 840 F.2d at 1127-28; *Sixth Angel*, 790 F. Supp. 2d at 358; *Sutton*, 2016 WL 7231702, at *10. The Third Circuit has consistently held that a state provides constitutionally adequate procedural due process when it provides reasonable remedies to rectify a legal error by a local administrative body. *See, e.g., Bello,* 840 F.2d at 1128 (citations omitted). The opinions cited have concurred that Pennsylvania state procedures for challenging administrative land use decisions are sufficient to meet constitutional due process requirements. *Id.* However, no case cited stands for the proposition that a property owner who files a mandamus action in state court based on a municipality's code enforcement officer's failure to grant or deny an application for an occupancy permit has done so pursuant to a Pennsylvania state procedure that has been held sufficient to meet constitutional due process requirements. Insofar as a municipal code officer's failure to render a decision on an occupancy permit application can be considered "legal error," whether recourse only to a mandamus action is

a "reasonable remedy" remains a question unanswered by the authority cited in the R&R. *Id.*

Third, a decision that procedural due process has been afforded must be based on an inquiry which has not occurred here. As stated in *Zinermon*, "to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate. This inquiry would examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law." 494 U.S. at 126. Although the Magistrate Judge concluded that Plaintiffs' state court filing was encompassed in "'Pennsylvania's scheme for judicial review of administrative land use decisions [which has] passed constitutional muster'" (Doc. 35 at 16 (quoting *Sixth Angel*, 790 F. Supp. 2d at 358 (citation omitted)) (citing *Bello*, 840 F.2d at 1128)), the foregoing discussion shows that the conclusion is not supported by the authority cited. Pursuant to *Zinermon*, 494 U.S. at 126, a conclusion that filing a mandamus action in state court precluded a claim for a violation of procedural due process would require an examination of the related statutory and administrative procedures and related remedies. The Court will not *sua sponte* undertake the necessary inquiry—to do so would be to improperly assume Defendants' burden at this motion to dismiss stage. *See Gould Electronics v. United States*, 220 F.3d 169, 178 (3d Cir. 2000). However, the Court will review the arguments proffered

by Defendants regarding Plaintiffs' Fourteenth Amendment procedural due process claim before determining whether this federal claim is properly dismissed on another basis.

Dorrance Defendants assert that "'[i]f there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants.'" (Doc. 8 at 7 (quoting *Alvin*, 227 F.3d at 116).) Dorrance Defendants conclude that Plaintiffs' failure to follow established administrative procedures is dispositive of their procedural due process claim. (*Id.* at 9.) They argue as follows:

> The General Assembly has provided a means of contesting a decision to withhold an occupancy permit: filing an appeal with a board of appeals created pursuant to the Uniform Construction Code. 34 Pa. Code § 403.121(b). Further, 34 Pa. Code § 403.122(a) provides that an owner "may ... appeal a building code official's decision...." *See* 34 Pa. Code § 403.122(a) (emphasis added). In order to administer the UCC and to adjudicate challenges to decisions made by a building code official, the UCC requires the establishment of a board of appeals. 35 P.S. § 7210.501(c); 34 Pa. Code § 403.121(a). "The board of appeals shall hear and rule on appeals...." 34 Pa. Code § 403.121(b). *See, e.g., Gerbracht v. Fairview, Harborcreek & Millcreek Townships UCC Appeals Bd.*, 61 A.3d 1073, 1078 (Pa. Cmwlth. 2013).
>
> It is uncontested that the Halchaks failed to appeal the decision of CII denying issuance of an occupancy permit. Therefore, "[s]ince Plaintiffs did not avail themselves of the procedural protections available under Pennsylvania law, they cannot sustain a federal procedural due process claim." *McLaughlin v. Forty Fort Borough*, 64 F. Supp. 3d 631, 647 (M.D. Pa. 2014) (Mariani, J.).

(Doc. 8 at 7-8.)

CII Defendants' conclusion that "Plaintiffs have not established a basis for a civil rights claim" (Doc. 10 at 12) is preceded by the following analysis:

> Plaintiffs have not alleged facts sufficient to make it plausible that CII deprived plaintiffs of any due process right or abused governmental power. Plaintiffs must, at a minimum, plead facts to show they were wrongfully denied an occupancy permit. Plaintiffs have alleged no basis to support the issuance of an occupancy permit. An alleged failure by CII to issue an occupancy permit, on its own, is not a violation of any right.

(*Id.*)

CII Defendants' limited discussion consists of conclusory assertions which cannot satisfy their burden of showing that Plaintiffs have not stated a plausible federal due process claim. Dorrance Defendants have provided specific argument in support of their conclusion that Plaintiffs' federal due process claim should be dismissed which the Court will now address.

Dorrance Defendants first state that "[t]he General Assembly has provided a means of contesting a decision to withhold an occupancy permit: filing an appeal with a board of appeals created pursuant to the Uniform Construction Code. (Doc. 8 at 7 (citing 34 Pa. Code § 403.121(b)). With this assertion Dorrance Defendants characterize the withholding of a permit to be a decision under the law. The Court disagrees.

A building code official's obligations regarding the granting or denial of permits is set out in 34 Pa. Code § 403.43:

> A building code official shall grant or deny a permit application, in whole or in part, within 30 business days of the filing date. Reasons for the denial must be in writing, identifying the elements of the application which are not in compliance with the relevant provisions of the Uniform Construction Code and ordinance as appropriate and providing a citation to the relevant provisions of the Uniform Construction Code and ordinance as appropriate, and sent to the applicant. The building code official and the permit applicant may agree in

writing to extend the deadline by a specific number of days. 34 Pa. Code § 403.43(a). 34 Pa. Code § 403.121 addresses the creation of a board of appeals under the Uniform Construction Code, the duties of the board of appeals, and related matters. Section 403.121 states the following in pertinent part:

> (a) A municipality which has adopted an ordinance for the administration and enforcement of the Uniform Construction Code or is a party to an agreement for the joint administration and enforcement of the Uniform Construction Code shall establish and appoint members to serve on a board of appeals under section 501(c) of the act (35 P. S. § 7210.501(c)).
>
> (b) The board of appeals shall hear and rule on appeals, requests for variances and requests for extensions of time. An application for appeal shall be based on a claim that the true intent of the act or Uniform Construction Code has been incorrectly interpreted, the provisions of the act or Uniform Construction Code do not fully apply or an equivalent form of construction is to be used.

34 Pa. Code § 403.121. Section 403.122(a) provides that "[a]n owner or owner's agent may seek a variance or extension of time or appeal a building code official's decision by filing a petition with the building code official or other person designated by the board of appeals on a form provided by the municipality." The Pennsylvania statute which requires the establishment of a board of appeals under the Construction Code Act states that the board of appeals is established "to hear appeals from decisions of the code administrator." 35 P.S. § 7210.501(c). Read together, these provisions indicate that a decision must be in writing, it must be rendered within thirty days unless an extension of time has been agreed upon in writing, and the appeal which the board of appeals would hear is the appeal of that written decision of the building code official.

Importantly, the relevant Pennsylvania provisions do not contemplate review of a building code official's failure to act. They do not, as Dorrance Defendants assert, provide a "means of contesting a decision to withhold an occupancy permit" (Doc. 8 at 7)—no provision renders an official's unwritten "decision to withhold" a permit to be a "decision" capable of appeal in the Pennsylvania scheme established. In contrast, in the statutory provision which addresses "Consideration of applications and inspections," a code administrator's failure to act is addressed, albeit in a limited context: "If the code administrator fails to act on an application for a construction permit for one-family and two-family dwelling units and utility and miscellaneous use structures within the time prescribed, the application shall be deemed approved." 35 P.S. § 7210.502. This provision is clearly not applicable here. More importantly, the provision recognizing a failure to act in a specific context indicates that, pursuant to relevant rules of statutory construction, the Court cannot read a failure-to-act basis for appeal into the generally applicable provisions discussed above.[2]

---

[2] Several familiar rules of statutory construction support this conclusion:

Different words used in the same, or a similar, statute are assigned different meanings whenever possible. . . . When the legislature uses a term or phrase in one statute or provision but excludes it from another similar statute or provision, courts do not imply an intent to include the missing term or phrase in that statute or provision where the term or phrase is excluded. Instead, omission of the same term or phrase from a similar section is significant
to show different legislative intent for the two sections.

§ 46:6.Each word given effect, 2A Sutherland Statutory Construction § 46:6 (7th ed.) (citations omitted).

The foregoing discussion indicates that the Pennsylvania scheme regarding the Construction Code Act does not provide a means of contesting an official's failure to act on the application for an occupancy permit. Seen in the proper context, Dorrance Defendants' statement that "[i]t is uncontested that the Halchaks failed to appeal the decision of CII denying issuance of an occupancy permit" (Doc. 8 at 8) is disingenuous at best: in taking no official action, CII did not deny the issuance of an occupancy permit, and Plaintiffs failed to appeal because they did not have a decision to appeal. Thus, Dorrance Defendants' conclusion that Plaintiffs "cannot sustain a federal procedural due process claim" (*id.*) on the basis asserted is not supported by the Pennsylvania code provisions or caselaw relied upon. On this record, the Court cannot conclude that Defendants have satisfied their burden of showing that Plaintiffs have not stated a plausible claim for relief based on their claimed Fourteenth Amendment procedural due process violation.

Neither Dorrance Defendants nor CII Defendants provide a basis for a contrary conclusion with their filings in response to Plaintiffs' objections. (Docs. 37, 38.) Though Plaintiffs' filings are not a model of clarity, they specifically articulate an objection based on

---

In contrast to the Construction Code Act scheme, in the Pennsylvania scheme for zoning matters, the zoning hearing board is given jurisdiction to hear and render final adjudications in matters which include "[a]ppeals from the determination of the zoning officer, including, but not limited to, the granting or denial of any permit, *or failure to act on the application therefor*, the issuance of any cease and desist order or the registration or refusal to register any nonconforming use, structure or lot." 53 Pa. Stat. Ann. § 10909.1(a)(3) (emphasis added).

the legal significance of the municipal code officer's failure to act. (*See, e.g.*, Doc. 36 ¶¶ 3, 15.) Defendants do not acknowledge Plaintiffs' objection concerning the dispositive distinction between the code enforcement officer's failure to act and a "decision" for purposes of the Pennsylvania scheme at issue. Because this distinction forms the basis of the Court's conclusion regarding Defendants' motions and the R&R, the arguments set out in Defendants' responsive briefs do not affect the foregoing analysis.

With the determination that Defendants' motions to dismiss are properly denied, the Court renders no opinion as to whether Plaintiffs' Fourteenth Amendment claim will ultimately succeed. Similarly, other arguments raised by Defendants with their motions to dismiss may again be raised without prejudice at the conclusion of discovery.

### III. CONCLUSION

For the reasons discussed above, the R&R (Doc. 35) will not be adopted. The Dorrance Township Board of Supervisors and Alan Snelson's Motion to Dismiss Amended Complaint (Doc. 2) will be denied. The Motion of Defendants, Code Inspections, Inc. and Ken Fenstermacher, to Dismiss Plaintiffs' Amended Complaint for Failure to State a Claim upon Which Relief Can Be Granted, Pursuant to F.R.C.P. 12(b)(6) (Doc. 7) will be denied. An appropriate Order is filed simultaneously with this Memorandum Opinion.

Robert D. Mariani
United States District Judge